**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KRISTIN ADAMIEC,**<br><br>On Behalf of Herself and All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   **v.**<br><br>**ASANA REBEL GMBH,**<br><br>      Defendant. | Civil Case No. 1:25-cv-10358 |

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
PURSUANT TO THE DOCTRINE OF *FORUM NON CONVENIENS***

---

**WITTELS MCINTURFF PALIKOVIC**

Daniel Kieselstein
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
djk@wittelslaw.com

*Counsel for Plaintiff and the Proposed Class*

**TABLE OF CONTENTS**

INTRODUCTION AND FACTUAL BACKGROUND ................................................................. 1

ARGUMENT ............................................................................................................................. 2

    I.   PLAINTIFF IS NOT BOUND BY THE TERMS OF USE ................................................ 2

        A.  Illinois Choice-of-Law Rules Apply to the Contract Formation Question .................. 2

        B.  Under Illinois Choice-of-Law Rules, Illinois Law Governs This Dispute .................. 3

        C.  Both Illinois and German Law Require Asana to Prove That Plaintiff Assented to the Terms of Use .................................................................................................... 4

        D.  Asana Failed to Make a *Prima Facie* Showing of Contract Formation ..................... 5

    II.  THE PROSPECTIVE WAIVER DOCTRINE PRECLUDES ENFORCEMENT OF THE FORUM SELECTION CLAUSE ....................................................................... 6

        A.  ICFA Codifies Fundamental Public Policy and Cannot Be Contracted Away ............. 6

        B.  The Choice-of-Law and Forum Selection Clauses Operate in Tandem as an Unenforceable Prospective Waiver Against Illinois Public Policy ............................. 8

    III. THE FORUM SELECTION CLAUSE IS ADDITIONALLY UNENFORCEABLE AS UNREASONABLE AND CONTRARY TO THE PUBLIC INTEREST .................. 9

        A.  Illinois Law Governs Terms of Use, Overriding the Choice-of-Law Provision Specifying German Law .......................................................................................... 10

            1.  Application of German Law Would Violate Illinois Public Policy ...................... 10

            2.  Illinois Has a Greater Interest in the Case Than Germany .................................. 11

        B.  Because Illinois Law Governs, the Forum Selection Clause Is Unenforceable ......... 11

            1.  Asana's Forum Selection Clause Is Unreasonable Under Illinois Law ................ 11

            2.  Public Factors Weigh in Favor of Keeping the Action in This Court .................. 12

    IV. EVEN IF THE FORUM SELECTION CLAUSE IS ENFORCEABLE, PLAINTIFF'S CLAIMS ARE OUTSIDE ITS SCOPE ................................................... 14

CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Patriot Ins. Agency v. Mutual Risk Mgmt., Ltd.*,
364 F.3d 884 (7th Cir. 2004) .................................................................................... 14

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
571 U.S. 49, 62  (2013).............................................................................................. 2

*Avery v. State Farm Mut. Auto. Ins. Co.*,
216 Ill. 2d 100 (2005) .............................................................................................. 15

*Berkshire Invs., LLC v. S-Pro, LLC*,
2023 WL 5165663 (N.D. Ill. Apr. 13, 2023)............................................................. 4

*Campbell v. Marshall Int'l, LLC*,
623 F. Supp. 3d 927 (N.D. Ill. 2022) ...................................................................... 12

*Fahy v. Minto Dev. Corp.*,
722 F. Supp. 3d 784 (N.D. Ill. 2024)......................................................................... 7

*Fischer v. Magyar Allamvasutak Zrt.*,
777 F.3d 847 (7th Cir. 2015) ................................................................................... 14

*Harris v. W6LS, Inc.*,
2024 WL 2319716 (N.D. Ill. May 22, 2024)............................................................. 6

*Hartman v. Meta Platforms, Inc.*,
2026 WL 482362 (S.D. Ill. Feb. 20, 2026)............................................... 4, 10, 11, 12

*Hinc v. Lime-O-Sol Co.*,
382 F.3d 716 (7th Cir. 2004) .................................................................................... 3

*Hogan v. Amazon.com, Inc.*,
2022 WL 952763 (N.D. Ill. Mar. 30, 2022)............................................................. 11

*Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*,
58 F. Supp. 2d 925 (N.D. Ill. 1999)........................................................................... 9

*IFC Credit Corp. v. Rieker Shoe Corp.*,
378 Ill.App.3d 77 (Ill. App. 1st Dist. 2007)........................................................... 12

*Johnson v. Hum. Power of N Co.*,
767 F. Supp. 3d 845 (N.D. Ill. 2025) ....................................................................... 4

*Kaufman v. Am. Exp. Travel Related Servs. Co.*,
2008 WL 687224 (N.D. Ill. Mar. 7, 2008)............................................................. 2, 3

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
 313 U.S. 487 (1941)................................................................................................................ 3

*Krautsack v. Anderson*,
 223 Ill. 2d 541 (2006) ........................................................................................................... 8

*Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*,
 800 F.3d 343 (7th Cir. 2015) ................................................................................................ 2

*Liu v. T & H Mach., Inc.*,
 191 F.3d 790 (7th Cir. 1999) ................................................................................................ 4

*M/S Bremen v. Zapata Off-Shore Co.*,
 407 U.S. 1 (1972).................................................................................................................. 6

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
 473 U.S. 614 (1985).............................................................................................................. 6

*Nicor, Inc. v. Associated Elec. & Gas Ins. Servs. Ltd.*,
 223 Ill. 2d 407 (2006) ......................................................................................................... 14

*Perry v. Nat'l City Mortg., Inc.*,
 2006 WL 2375015 (S.D. Ill. Aug. 15, 2006) ...................................................................... 14

*Robertson v. QC Franchise Grp. LLC*,
 2024 WL 6984911 (C.D. Ill. Sept. 3, 2024) ........................................................................ 7

*Sgouros v. TransUnion Corp.*,
 817 F.3d 1029 (7th Cir. 2016) .............................................................................................. 4

*Sosa v. Onfido, Inc.*,
 8 F.4th 631 (7th Cir. 2021) ................................................................................................... 3

*Tortoriello v. Gerald Nissan of N. Aurora, Inc.*,
 379 Ill. App. 3d 214 (Ill. App. 2d Dist. 2008) ..................................................................... 7

*Totz v. Cont'l Du Page Acura*,
 236 Ill. App. 3d 891 (Ill. App. 2d Dist. 1992) ..................................................................... 7

*Trinity Metals, LLC v. U.S. Conveyor Techs., Mfg., Inc.*,
 2023 WL 4626935 (C.D. Ill. July 19, 2023).......................................................................... 9

*W. Side Salvage, Inc. v. RSUI Indem. Co.*,
 878 F.3d 219 (7th Cir. 2017) ................................................................................................ 3

*Wildey v. Springs*,
 47 F.3d 1475 (7th Cir. 1995) ................................................................................................ 3

*Williams v. Ill. State Scholarship Comm'n*,
   139 Ill. 2d 24 (1990) ........................................................................................................... 12

*Wilson v. Napleton's Goldcoast Imports, Inc.*,
   2025 WL 2731054 (Ill. App. 3d Dist. Sept. 25, 2025) ............................................................. 8

**Statutes**

28 U.S.C. § 1332.................................................................................................................... 3

815 ILCS § 505/1 .................................................................................................................. 6

815 ILCS 505/10a ............................................................................................................. 7, 8

815 ILCS 505/10c ................................................................................................................ 7

**Other Authorities**

Restatement (Second) of Conflict of Laws § 187(2)(b) (1971)....................................................... 10

Restatement (Second) of Conflict of Laws § 188 (1971) ............................................................... 3

**INTRODUCTION AND FACTUAL BACKGROUND**

Asana Rebel GmbH ("Asana" or "Defendant") is a German company that sells fitness subscriptions to Illinois consumers through a subscription scheme deliberately designed to trap them in recurring payments. Asana presents what appear to be time-limited offers while burying information about automatic renewal, makes cancelling a subscription a deliberately painful eight-step process spanning six web pages, and fails to send the renewal notices Illinois law requires. These are not oversights—they are design choices calculated to exploit consumer decision-making biases to maximize recurring revenue at consumers' expense. Complaint (ECF No. 1) ¶¶ 24–74.

Plaintiff Kristin Adamiec is one of Asana's Illinois victims. She enrolled in a one-year Asana subscription in January 2024 for $35.99 and decided not to renew. *Id.* ¶¶ 21, 75, 77. Asana charged her credit card $71.98 anyway—double the original price—without her knowledge or permission. *Id.* ¶ 79. She filed this action in August 2025 asserting statutory and common law claims. *Id.* ¶¶ 108–42. None of her claims sound in contract or arise from any contract.

Now Asana asks this Court to send Plaintiff to Berlin to litigate her Illinois consumer protection claims in a German court under German law—a forum where her ICFA claim would not exist, where punitive damages are unavailable, and where losing means paying Asana's legal fees. Asana's request is premised on a forum selection clause buried in its Terms of Use that Asana cannot show Plaintiff ever saw or agreed to.

Asana's motion (ECF No. 26) ("Motion" or "Mot.") fails for four independent reasons. ***First***, under both German and Illinois law, Asana bears the burden of proving Plaintiff assented to its Terms of Use, yet it has produced no evidence of contract formation. Instead, Asana relies solely on its Managing Director's bare assertion that Plaintiff's subscription was "governed by the Terms of Use in effect at the time [she] enrolled," which is a legal conclusion, not evidence. The Motion should be denied on this basis alone. ***Second***, even if the Terms of Use were binding, the

1

choice-of-law and forum selection clauses operate in tandem as a prospective waiver of Plaintiff's non-waivable statutory rights and are therefore unenforceable. ***Third***, Illinois law overrides the Terms' choice-of-law clause selecting German law, and under Illinois law the forum selection clause is unenforceable as unreasonable and against the public interest. ***Fourth***, even if the forum selection clause were otherwise enforceable, Plaintiff's statutory and common law claims do not arise from the Terms of Use and therefore fall outside its scope.

## ARGUMENT

### I. PLAINTIFF IS NOT BOUND BY THE TERMS OF USE

The threshold issue in enforcing forum selection clauses is whether the parties agreed to a valid forum selection clause. *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013) ("***When the parties have agreed*** to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." (emphasis added)); *see also Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015) (choice-of-law provisions do not apply "if the contract's legality is fairly in doubt," including if there is an "issue as to the validity of the very formation of the contract."). As demonstrated below, Asana bears the burden of establishing that Plaintiff assented to the Terms of Use, and it has failed to carry that burden under either Illinois or German law.

### A. Illinois Choice-of-Law Rules Apply to the Contract Formation Question

Before the Court can assess whether a valid contract was formed, it must determine which state's law governs that question. *Kaufman v. Am. Exp. Travel Related Servs. Co.*, 2008 WL 687224, at *3 (N.D. Ill. Mar. 7, 2008) ("[A]s an antecedent matter, the court must determine whether the parties have a valid contract, and, before it can do that, it must decide which state's law applies to the issue of contract formation. Only if the court finds a valid contract may it turn to the choice of law provision in the Agreement[.]"). Because this Court's jurisdiction rests on the

Class Action Fairness Act, which "is part of the diversity jurisdiction statute," *id.* at \*4 (citing 28 U.S.C. § 1332), Illinois choice-of-law rules apply. *Id.* ("A district court applies the choice of law rules of the state in which it sits in a diversity case." (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496–97 (1941)*)).

"Under Illinois choice-of-law rules, forum law is applied unless [1] an actual conflict with another state's law is shown, or [2] the parties agree that forum law does not apply." *Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021) (quotation marks and citations omitted). Neither exception applies here. Asana has not shown any conflict between Illinois and German formation law, and Plaintiff does not agree that German law governs. Illinois choice-of-law rules therefore apply.

**B.        Under Illinois Choice-of-Law Rules, Illinois Law Governs This Dispute**

Illinois uses the "most significant contacts" test from the Restatement (Second) of Conflict of Laws § 188 (1971) in deciding choice-of-law disputes with respect to contractual issues. *Hinc v. Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004). The relevant contacts include "'the place of contracting, negotiation, performance, location of the subject matter of the contract, and the domicile, residence, place of incorporation, and business of the parties.'" *Id.* (citing *Wildey v. Springs*, 47 F.3d 1475, 1483 (7th Cir. 1995)).

Each of these contacts points to Illinois.[1] A court recently applied this test in nearly identical circumstances, where a foreign company provided online services to Illinois consumers.

---

[1] Although Plaintiff contends that Illinois law applies, the Court does not need to analyze these factors to determine that the Terms of Use are not the agreement between the parties. Because both Illinois and Germany apply substantially similar rules for establishing contract formation, they lead to the same result, obviating this analysis. *See W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017) ("Illinois courts engage in a choice-of-law analysis only if there is a conflict between Illinois law and the law of another state such that a difference in law will make a difference in the outcome." (quotation omitted)). *But*, to the extent the Court determines that the Terms of Use represent the contract between the parties, analysis of § 188 *is* necessary to conclude that the choice-of-law provision in the Terms of Use specifying German law is overridden by Illinois law. *See infra* at § 3.A.

*See Hartman v. Meta Platforms, Inc.*, 2026 WL 482362, at \*11 n.10 (S.D. Ill. Feb. 20, 2026). The *Meta* court noted that "the place of negotiation is not particularly important" because the terms of service were "standardized documents, which Plaintiffs could not modify." *Id.* The domicile of the parties was balanced between the plaintiffs (Illinois) and the defendant (California). *Id.* "The place of contracting and place of performance are more likely to favor Illinois because . . . it is the state where Plaintiffs signed up for . . . and where they predominantly used [defendant's] products." *Id.* And because the subject matter was intangible, the location factor did not tip the scale in favor of the defendant's home state. *Id.* The court concluded that Illinois had the "'most significant relationship to the transaction and the parties[.]'" *Id.* The same is true here.

C. **Both Illinois and German Law Require Asana to Prove That Plaintiff Assented to the Terms of Use**

"Under Illinois law, the proponent of a contract bears the burden of establishing a contract's existence." *Berkshire Invs., LLC v. S-Pro, LLC*, 2023 WL 5165663, at \*3 (N.D. Ill. Apr. 13, 2023) (citing *Liu v. T & H Mach., Inc.*, 191 F.3d 790, 795 (7th Cir. 1999)). General contract principles apply to online agreements, and Illinois courts use an objective approach to the question of mutual assent. *See Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1034 (7th Cir. 2016). Where a consumer clicks an "I accept" button or similar affirmative assent mechanism, the agreement may be enforceable as a clickwrap. *Johnson v. Hum. Power of N Co.*, 767 F. Supp. 3d 845, 850 (N.D. Ill. 2025). Where no such mechanism exists, an online contract is enforceable only if the website provided "reasonably conspicuous notice" of the terms and the consumer took some action that "unambiguously manifested assent" to them. *Id.* The burden is on Asana to establish which type of agreement it claims was formed. It has produced no evidence that either standard was met.

German law imposes the same burden. The party asserting rights under a contract bears the burden of showing contract formation and must prove that standard terms and conditions have

4

been effectively incorporated into the contract. *See* Declaration of Jesko Onken, dated Mar. 12, 2026 ("Onken Decl."), ¶¶ 17–18. For "pre-formulated contractual terms and conditions" (like Asana's Terms of Use, *id.* ¶ 29), Asana was required to explicitly direct Plaintiff to them before the agreement was formed, ensure she had a reasonable opportunity to review them, and obtain her agreement to their applicability. *Id.* ¶ 15.c. Moreover, consumer contracts are subject to enhanced protections beyond these baseline requirements. *Id.* ¶ 16.

The standard is thus the same under both systems of law: Asana must prove Plaintiff's assent. It has not done so.

### D. Asana Failed to Make a *Prima Facie* Showing of Contract Formation

Asana presents no evidence that Plaintiff ever saw, was directed to, or assented to the Terms of Use. The Klein Declaration's silence is telling: Asana's Managing Director attests the *current* Terms of Use are available on Asana's website—but says nothing about whether the 2023 terms Asana claims bind Plaintiff were ever available there. ECF No. 26-1, ¶¶ 10–11 (explaining the current terms are on Asana's website but remaining silent on the 2023 terms Asana claims bind Plaintiff). Nor does he provide evidence of how the Terms of Use would have been presented on Asana's website. This is not a minor omission. It is impossible to assess whether Asana provided Plaintiff reasonably conspicuous notice of the Terms, or whether she unambiguously manifested her assent, when Asana has not established that those Terms were accessible to her at enrollment.

Asana's only affirmative showing is its Managing Director's bare assertion that "Plaintiff's subscription to AR [Asana] was governed by the Terms of Use in effect at the time Plaintiff enrolled." ECF No. 26-1, ¶ 10. That is a legal conclusion dressed up as a fact. It carries no weight under either Illinois or German law, and Asana's motion should be denied on this basis alone. *See A.D. v. Credit One Bank, N.A.*, 885 F.3d 1054, 1063 (7th Cir. 2018) (reversing grant of motion to compel arbitration because Defendant had not met its burden to show plaintiff was bound by

5

cardholder agreement containing arbitration clause); Onken Decl. ¶ 17 (citing opinion from the highest German Court stating that "the party wishing to derive rights from the contract bears the burden of proof for the unconditional conclusion of the contract.").

## II. THE PROSPECTIVE WAIVER DOCTRINE PRECLUDES ENFORCEMENT OF THE FORUM SELECTION CLAUSE

Even if Asana could prove that Plaintiff is bound by the Terms of Use, the doctrine of prospective waiver bars enforcement of the forum selection clause because it "would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972). Under this doctrine, courts "condemn" agreements where forum selection and choice-of-law clauses "operate[] in tandem" to strip a party of their right to pursue essential statutory remedies. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985). The doctrine is not limited to federal claims; it also applies to "waivers of substantive state law rights." *Harris v. W6LS, Inc.*, 2024 WL 2319716, at *9 (N.D. Ill. May 22, 2024). Because the forum selection and choice-of-law provisions in Asana's Terms of Use operate in tandem as a prospective waiver to deprive Plaintiff of ICFA's mandatory protections, these provisions are unenforceable.

### A. ICFA Codifies Fundamental Public Policy and Cannot Be Contracted Away

The Illinois Consumer Fraud and Deceptive Business Practices Act 815 ILCS § 505/1 *et seq.* ("ICFA")[2] codifies the fundamental public policy choice by the Illinois legislature to provide broad and robust protections to consumers. It was specifically enacted to "expand the rights of consumers beyond those of the common law and to provide greater protection to consumers than does the common-law action for fraud." *Totz v. Cont'l Du Page Acura*, 236 Ill. App. 3d 891, 901

---

[2] Violations of the Illinois Automatic Contract Renewal Act 815 ILCS 601/1 *et seq.* ("IACRA") are considered unlawful practices under ICFA. 815 ILCS 601/15 ("A violation of this Act constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act.").

(Ill. App. 2d Dist. 1992). To that end, ICFA provides courts a "clear mandate:" the statute should be "liberally construed" and used "to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and provide appropriate relief to consumers." *Id.*

That ICFA embodies Illinois's fundamental public policy choices is best evidenced by its non-waiver provision. In 2004, the legislature amended ICFA to explicitly state that "[a]ny waiver or modification of the rights, provisions, or remedies of this Act shall be void and unenforceable." 815 ILCS 505/10c. Such a non-waiver provision is "indicative of the Illinois legislature's intent to establish public policy." *Fahy v. Minto Dev. Corp.*, 722 F. Supp. 3d 784, 806 (N.D. Ill. 2024). Consequently, any attempt to deny or dilute ICFA's protections is contrary to Illinois public policy. *See Robertson v. QC Franchise Grp. LLC*, 2024 WL 6984911, at *11 (C.D. Ill. Sept. 3, 2024) (allegation that Nebraska choice-of-law provision "does not include a consumer fraud statute similar to ICFA" sufficient to preserve ICFA claim at dismissal stage because applying Nebraska law "could potentially violate fundamental Illinois public policy").

ICFA's key policy choices include the specific remedies it makes available to consumers, most notably punitive damages and asymmetrical fee-shifting. ***First***, ICFA makes punitive damages a core statutory remedy. Specifically, Section 10a(a) grants courts the discretion to award not just "actual economic damages," but also "any other relief which the court deems proper." 815 ILCS 505/10a(a). This includes punitive damages. *See Tortoriello v. Gerald Nissan of N. Aurora, Inc.*, 379 Ill. App. 3d 214, 238 (Ill. App. 2d Dist. 2008) (contractual disclaimer of punitive damages "void and unenforceable" as "an attempt to categorically exclude a form of relief authorized by the Consumer Fraud Act"). Because ICFA prohibits the waiver of its "remedies," any contractual provision that operates to "categorically exclude" the availability of punitive damages is "void and unenforceable" as a matter of public policy. *Id.* ***Second***, ICFA contains a fee-shifting provision

7

that is central to its remedial purpose and is a critical mechanism ensuring consumer access to justice. While ICFA allows an award of "reasonable attorney's fees and costs" to a prevailing party, 815 ILCS 505/10a(c), such fees are unavailable to a prevailing defendant absent a showing of bad faith on behalf of the plaintiff. *See Krautsack v. Anderson*, 223 Ill. 2d 541, 559 (2006). Meanwhile, a prevailing plaintiff need not show bad faith to obtain fees and costs. *Id*. at 559–60. This asymmetry is central to ICFA's purpose because it levels the playing field, enabling "defrauded consumers to obtain representation and seek redress where they might otherwise be outmatched in resources" and "incentiviz[ing] counsel" to take on complex consumer litigation. *Wilson v. Napleton's Goldcoast Imports, Inc.*, 2025 WL 2731054, at *19 (Ill. App. 3d Dist. Sept. 25, 2025).

**B.**      **The Choice-of-Law and Forum Selection Clauses Operate in Tandem as an Unenforceable Prospective Waiver Against Illinois Public Policy**

Here, the Terms of Use's forum selection and choice-of-law provisions operate in tandem to subvert ICFA's fundamental public policy by seeking to require Plaintiff to pursue her claims in a remedially deficient environment. This is exactly the type of prospective waiver the Supreme Court warned about in *Mitsubishi Motors*.

The threshold problem is that a German court would not apply ICFA at all. ICFA is an Illinois statute that governs the conduct of businesses operating in Illinois and provides remedies to Illinois consumers. *See* 815 ILCS 505/2. A German court has no basis—and no obligation—to apply it. *See* Onken Decl. ¶ 24. Plaintiff's ICFA claim would therefore not exist in the German forum; it would simply disappear. That alone is sufficient to establish prospective waiver, because enforcing these provisions would allow Asana to extinguish a cause of action the Illinois legislature specifically created and declared non-waivable.

8

Even if a German court were to entertain any potentially analogous claims under German law, the remedial environment is fundamentally inferior in two respects. ***First***, while ICFA makes punitive damages a core statutory remedy, German civil law is purely compensatory and does not permit punitive damages. Onken Decl. ¶ 20. ***Second***, under German law the "loser pays" rule would require Plaintiff to pay Asana's fees and expenses if Asana prevails, even absent any bad faith on Plaintiff's part, in sharp contrast to ICFA's asymmetric fee-shifting provision, which was specifically designed to level the playing field between defrauded consumers and corporate defendants. *Id.* ¶ 22. Forcing an Illinois consumer to litigate under a "loser pays" regime creates precisely the financial barrier that the Illinois legislature sought to eliminate.

Because enforcing these provisions (i.e., applying German law in a German court) would cause Plaintiff's ICFA claim to vanish entirely and would strip Plaintiff of her non-waivable remedies even if some analog existed, the forum selection and choice-of-law clauses operate as an unenforceable prospective waiver of rights guaranteed to Plaintiff by Illinois law.[3]

## III.   THE FORUM SELECTION CLAUSE IS ADDITIONALLY UNENFORCEABLE AS UNREASONABLE AND CONTRARY TO THE PUBLIC INTEREST

Even if the Court finds no prospective waiver, Asana's forum selection clause still cannot be enforced. As shown below, Illinois law overrides the German choice-of-law clause, and under Illinois law the forum selection clause is unenforceable as (1) unreasonable and (2) contrary to the public interest.

---

[3] Asana may rely on *Hull 753 Corp. v. Elbe Flugzeugwerke GmbH*, 58 F. Supp. 2d 925 (N.D. Ill. 1999), which found that Germany was an appropriate forum to adjudicate ICFA claims. But *Hull 753*—as well as other cases with similar results from the 1980s and 1990s, including those cited by the corporate defendant in *Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at *5 (N.D. Ill. Mar. 30, 2022), *see infra* § III.A.2—was decided ***before*** ICFA was amended to include the nonwaiver provision, elevating consumer protection to the level of fundamental public policy. *See Trinity Metals, LLC v. U.S. Conveyor Techs., Mfg., Inc.*, 2023 WL 4626935, at *7 (C.D. Ill. July 19, 2023) (finding 1996 case permitting contractual disclaimer of ICFA remedies was "no longer controlling as ICFA was subsequently amended" to add non-waiver provision).

**A.** **Illinois Law Governs Terms of Use, Overriding the Choice-of-Law Provision Specifying German Law**

Under the Restatement (Second) of Conflict of Laws, an agreement's governing law can be overridden where (1) applying that law "would be contrary to a fundamental policy of a state which has a materially greater interest" in "the determination of the particular issue" and (2) that other state "would be the state of the applicable law in the absence of an effective choice of law by the parties" under § 188. *Id*. § 187(2)(b). This analysis is particularly important where, as here, the relevant agreement is a contract of adhesion. *See Hartman v. Meta Platforms, Inc.*, 2026 WL 482362, at *5 (S.D. Ill. Feb. 20, 2026) (choice-of-law provisions in adhesion contracts "may trigger heightened scrutiny before they are enforced"). The Court must therefore consider whether applying German law "would violate fundamental Illinois Public Policy" and whether "Illinois has a materially greater interest in the litigation" than Germany. *Id.* As both prongs of the test are met here, the choice-of-law clause is overridden, and Illinois law applies. *See supra* at § I.B.

**1.** **Application of German Law Would Violate Illinois Public Policy**

As discussed above, ICFA embodies fundamental Illinois public policy. *See supra* at § II.A. Two features of ICFA are particularly relevant here. First, the Illinois legislature explicitly made ICFA's rights and remedies non-waivable. *See* 815 ILCS 505/10c. A contractual provision that routes an ICFA claim to a forum where it cannot be brought is precisely the kind of waiver the legislature prohibited. Second, ICFA's core remedies—punitive damages and asymmetric fee-shifting—are unavailable under German law. A German court applying German law may not award punitive damages and would expose Plaintiff to a "loser pays" fee regime that the Illinois legislature specifically rejected as a barrier to consumer litigation. *See* Onken Decl. ¶¶ 20, 22. Applying German law would thus not merely dilute ICFA's protections—it would extinguish them entirely. That is the definition of a fundamental public policy violation.

### 2. Illinois Has a Greater Interest in the Case Than Germany

Asana asserts that its registered office, employees, and physical presence are all in Germany. Mot. at 1–2. But when "corporate domicile is balanced against another state's interest in protecting the rights of its citizens, the state whose protective legislation is on the line often has a materially greater interest in the outcome of the case." *Meta*, 2026 WL 482362, at \*10; *see also Hogan v. Amazon.com, Inc.*, 2022 WL 952763, at \*5 (N.D. Ill. Mar. 30, 2022) ("The fact that Amazon is headquartered in Washington and employs workers there does not give Washington a greater interest [than Illinois].").

*Meta* is directly on point. There, Meta argued that California's interest in the litigation was at least equal to Illinois's because Meta is headquartered there and California's tech sector relies on its laws for certainty and predictability. The court rejected that argument, concluding "Illinois has a materially greater interest in [that] litigation than California because the application of California law would result in the evisceration of one of [Illinois's] critical pieces of privacy legislation." *Meta*, 2026 WL 482362, at \*11. Asana cannot even muster Meta's predictability argument—it is a German company with no presence in the United States whose only connection to this forum is that it targeted Illinois consumers with a deceptive subscription scheme. Applying German law would equally "eviscerate" ICFA's protections, *see supra* at § II.B., and Asana's German domicile is insufficient to outweigh Illinois's materially greater interest in this litigation.

### B. Because Illinois Law Governs, the Forum Selection Clause Is Unenforceable

### 1. Asana's Forum Selection Clause Is Unreasonable Under Illinois Law

Because Illinois law overrides the German choice-of-law clause, Illinois law also governs the enforceability of the forum selection clause itself. Under Illinois law, a forum selection clause in a contract should be enforced "unless the opposing party shows that enforcement would be unreasonable under the circumstances." *IFC Credit Corp. v. Rieker Shoe Corp.*, 378 Ill.App.3d 77,

11

85–86 (Ill. App. 1st Dist. 2007) (citation omitted). Courts consider six factors in determining reasonableness: (1) the law governing the contract; (2) the residency of the parties; (3) the place of execution and/or performance; (4) the location of parties and witnesses; (5) the inconvenience to the parties; and (6) whether the clause was equally bargained for. *Id.* at 86.

Four of the six factors favor Illinois. The first factor favors Illinois because Illinois law governs the Terms of Use. *See supra* at § III.A. The second factor is neutral because Plaintiff resides in Illinois and Defendant in Germany. The third factor favors Illinois because, to the extent Plaintiff is bound by the Terms of Use, the agreement was formed and performed in Illinois. *See Meta*, 2026 WL 482362, at *11 n. 10. The fourth factor is neutral: each party has identified a single witness in their respective initial disclosures. Plaintiff identified herself and Asana identified a single corporate representative. Kieselstein Decl. ¶ 3, Exs. 1–2. The fifth factor favors Illinois: it is easier for a foreign company doing business in Illinois to send a corporate witness here than for a consumer plaintiff to litigate in Germany. The sixth factor heavily favors Illinois because the Terms of Use are an adhesion contract that was not bargained for ***at all***, and a forum selection clause embedded in an adhesion contract carries "far less weight." *Williams v. Ill. State Scholarship Comm'n*, 139 Ill. 2d 24, 73 (1990).

With four factors favoring Illinois and two neutral, the clause is unreasonable and unenforceable. *See Campbell v. Marshall Int'l, LLC*, 623 F. Supp. 3d 927, 934 (N.D. Ill. 2022) (Bucklo, J.) (finding forum selection clause unreasonable).

### 2. Public Factors Weigh in Favor of Keeping the Action in This Court

Under Illinois law, the public interest factors used to assess if a case should be dismissed in favor of the forum designated in a contract weigh heavily in favor of keeping this case in Illinois.

Factor 1: Court Congestion. Asana's congestion argument rests on a false comparison. It cites a figure of 56.4 months from filing to trial versus a 6.1-month average case duration in

Germany—but both figures are wrong. The median pendency of a case in this District is 7.1 months; Asana's 56.4-month figure reflects only the tiny fraction of cases (less than 0.4%) that actually reach trial. Kieselstein Decl. ¶ 4, Ex. 3. And Asana's German figures rely on outdated 2016 statistics. The most recent data shows an average pendency in Landgericht Berlin II of between 13.3 and 14.4 months. Onken Decl. ¶ 25. Moreover, this comparison ignores that U.S. litigation includes substantial pre-trial discovery that is not available in Germany, making the nominal timelines not directly comparable. *Id.* ¶ 21. When accurate, current figures are used, German courts are the more congested forum. This factor weighs against dismissal.

Factor 2: Local Interest. Illinois has a significantly greater interest in adjudicating violations of Illinois consumer protection laws than does Germany, whose courts are unlikely to apply ICFA at all. Onken Decl. ¶ 24. This is not, as Asana suggests, a dispute localized to Germany; it is a dispute about a German company's deceptive practices directed at Illinois consumers, governed by Illinois law. This factor weighs against dismissal.

Factors 3 and 4: Governing Law and Conflicts of Law. Both factors favor Illinois. As established above, Illinois law governs this dispute. *See supra* at § III.A. A German court would therefore be required to interpret and apply ICFA—an Illinois consumer protection statute it has no familiarity with—in a foreign language and legal tradition. This Court, by contrast, is at home with ICFA. Sending this case to Germany would require a foreign tribunal to apply substantive law it did not develop and does not regularly administer—precisely the unnecessary conflict-of-law problem these factors are designed to avoid. Both factors weigh against dismissal.

Factor 5: Jury Duty. This factor does not favor dismissal. Asana asserts that Germany would deprive Plaintiff of a jury, such that German citizens are not burdened by jury duty, and seeks to draw an unfavorable contrast to this forum which affords Plaintiff the right to a jury trial.

13

But, as Asana notes, this factor weighs the "unfairness of burdening citizens in **an unrelated forum** with jury duty," Mot. at 4 (citing *Fischer v. Magyar Allamvasutak Zrt*, 777 F.3d 847, 868 (7th Cir. 2015)* (emphasis added)). The Northern District of Illinois is not an unrelated forum. This case concerns an Illinois consumer alleging violations of Illinois law that took place in Illinois—Illinois citizens thus have a legitimate interest in ensuring the ICFA is enforced here.

With four out of five public interest factors weighing against dismissal and no factor favoring it, the case should proceed in this Court.

## IV. EVEN IF THE FORUM SELECTION CLAUSE IS ENFORCEABLE, PLAINTIFF'S CLAIMS ARE OUTSIDE ITS SCOPE

Asana's forum selection clause provides that the "exclusive venue and jurisdiction for any and all disputes **arising from this Agreement** will be in the courts at the place of our registered office" (emphasis added). The scope of this clause is ambiguous; it is unclear which disputes are covered. Onken Decl. ¶ 33. Under Illinois law, courts construe ambiguities—even in forum selection clauses—against the drafter, especially when, as here, the contract is one of adhesion. *Nicor, Inc. v. Assoc.'d Elec. & Gas Ins. Servs. Ltd.*, 223 Ill. 2d 407, 417 (2006) ("Where ambiguity does exist, the policy will be construed strictly against the insurer, who drafted the policy"); *Perry v. Nat'l City Mortg., Inc.*, 2006 WL 2375015, at *5 (S.D. Ill. Aug. 15, 2006) ("[I]f the drafter so intended the forum selection clause to apply to more than just actions involving the Agreement itself, Defendant could have included [broader language]"). German law also recognizes this *contra proferentem* principle. Onken Decl. ¶ 15.c. Construed against Asana, "arising from this Agreement" should be interpreted narrowly to cover only breach of contract claims.

Asana's own authority confirms this reading. Asana cites one case for the proposition that forum selection clauses should be construed broadly. *See* Mot. at 7 (citing *Am. Patriot Ins. Agency v. Mutual Risk Mgmt., Ltd.*, 364 F.3d 884, 889 (7th Cir. 2004)). But the Seventh Circuit's reasoning

14

in that case cuts against Asana here. The court explained that a dispute "does not cease to be" contractual "merely because instead of charging breach of contract the plaintiff charges a fraudulent breach, or fraudulent inducement, or fraudulent performance." *Id.* at 889. Each of the examples proffered by the *Mutual Risk* court concern how the contract was performed or induced—they are fundamentally about the contractual relationship itself. Plaintiff's claims are not. They arise from Asana's deceptive website disclosures before enrollment, its obscure cancellation process, and its non-compliant renewal notices—conduct implicating statutory duties imposed by Illinois law on businesses that sell recurring subscriptions to consumers, duties which exist regardless of the terms of any contract between the parties. These are not disputes about contractual performance dressed in statutory clothing; they are standalone statutory and common law claims that would exist regardless of whether any contract was ever formed.

Illinois law independently confirms that these claims fall outside any contractual scope. Statutory claims under IACRA and ICFA may not be based on breach of contract as a matter of law. *See Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 170 (2005). And Plaintiff's unjust enrichment, conversion, and moneys had and received claims exist precisely because no enforceable contract governs the dispute—they are remedies for Asana's wrongful retention of funds in the absence of a valid agreement, not claims arising from one. Because none of Plaintiff's claims are fundamentally about the performance of the Terms of Use, none of her claims are within the scope of the forum selection clause.

## CONCLUSION

For all the reasons explained above, the Court should deny Asana's Motion.

15

Dated: March 13, 2026                  Respectfully submitted,

By: */s/ Daniel Kieselstein*

**WITTELS MCINTURFF PALIKOVIC**
Daniel Kieselstein
305 BROADWAY, 7TH FLOOR
NEW YORK, NEW YORK 10007
Telephone: (914) 775-8862
djk@wittelslaw.com

*Counsel for Plaintiff and the Proposed Class*

16

**<u>LOCAL CIVIL RULE 7.1 AND 5.2(e) CERTIFICATION</u>**

I hereby certify that the foregoing document complies with Local Rule 7.1 because it is 15 pages long (excluding the caption, table of contents, table of authorities, and signature block) and with Local Rule 5.2(e) because the body text is in 12-point font and is double-spaced and the footnote text is in 11-point font.

Dated: March 13, 2026          By:     <u>/s/ Daniel Kieselstein</u>
                                                  Daniel Kieselstein

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2026, the foregoing was served via ECF on all counsel of record.

By:    /s/ Daniel Kieselstein

18