**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **KRISTIN ADAMIEC,**<br><br>On Behalf of Herself and All Others Similarly Situated,<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ASANA REBEL GMBH,**<br><br>**Defendant.** | Case No.: 1:25-cv-10358 |

**REPORT OF PARTIES' PLANNING MEETING**

1. **Meeting.** Pursuant to Fed. R. Civ. P. 26(f), a videoconference was held on June 22, 2026, and was attended by:

    - *Counsel for Plaintiff and the Proposed Class*: J. Burkett McInturff, Andrey Belenkey, and Daniel Kieselstein

    - *Counsel for Defendant*: Margaret Hayes

2. **Pretrial Schedule.** The parties jointly propose to the Court the following discovery plan:

    - Plaintiff to amend pleadings and add additional parties by: **October 16, 2026**

    - Defendant to amend pleadings or add additional parties by: **November 20, 2026**

3. **Discovery.** Discovery will be needed on the following subjects:

*Plaintiff's Statement*:

In November 2025, Plaintiff issued requests seeking discovery of data specific to Plaintiff (e.g., account-level data, including enrollment and billing data), analogous class discovery (e.g., class-wide account-level data), and discovery into Defendant's automatic renewal practices challenged in Plaintiff's Class Action Complaint (e.g., web design documents, internal communications regarding automatic renewal and subscription-related web design, internal assessments of the challenged automatic renewal practices, and customer

1093428\330711337.v3

and other stakeholder communications regarding such practices including customer complaints).

***ESI Protocol, Protective Order, and Impact of German/EU Law on Discovery***

To date, Defendant has refused to engage productively in the basic precursors to a collaborative discovery process, including negotiating an ESI Protocol and Protective Order (proposed drafts of which Plaintiff provided on January 7, 2026). Since the parties' first Rule 26(f) conference on November 18, 2025, Defendant has gestured at German and European Union ("EU") law as an impediment to its compliance with its discovery obligations. But it did so in general terms, providing no specifics or support and instead attempting to shift the burden of both identifying and resolving any purported conflict with foreign law onto Plaintiff.

This approach is contrary to case law, including recent case law in this District: when resisting discovery based on a supposed "blocking" statute, it is the responding party's burden to establish "the provisions of the foreign law, the basis for its relevance, and the application of the foreign law to the facts of the case." *Motorola Sols., Inc. v. Hytera Comm's Corp. Ltd.*, No. 1:17-CV-01972, 2023 WL 5956992, at *3 (N.D. Ill. Sep. 12, 2023) (compelling production where defendant did not meet its burden to show foreign statute blocks production); *Republic Techs. (NA), LLC v. BBK Tobacco & Foods, LLP*, No. 16 C 3401, 2017 WL 4287205, at *1 (N.D. Ill. Sept. 27, 2017) (rejecting defendant's argument that the Hague Convention blocked discovery).

Despite this, Defendant has (1) provided no revisions based on foreign law concerns to the Protective Order and ESI Protocol proposed by Plaintiff; (2) failed to object on this basis to Plaintiff's discovery requests, issued on November 18, 2025; (3) failed to respond to conferral requests regarding identified deficiencies in its discovery responses; (4) refused, until receiving Plaintiff's prior draft of this Rule 26(f) statement on June 30, 2026, to provide specific provisions of foreign law it contends impair its ability to comply with its discovery obligations, despite nearly a dozen requests seeking the same; and (5) when it finally did provide citations to foreign law on July 2, 2026 via its draft Rule 26(f) statement, failed to explain with specificity how they apply to the discovery sought to date.

In view of this history and the parties' related communications discussed below, if Defendant does not provide good-faith proposals as to the ESI Protocol and the Protective Order by July 20, Plaintiff will move the Court to: (1) enter the Protective Order sent by Plaintiff to Defendant on June 26, 2026 and the ESI Protocol sent by Plaintiff to Defendant on January 7, 2026; and (2) order Defendant to supplement its Initial Disclosures, so that discovery can commence.

Plaintiff has repeatedly sought Defendant's position regarding its preferred way of addressing its concerns regarding foreign law. As noted above, Defendant first raised foreign law on November 18, 2025, but provided no specifics. Plaintiff sought clarification

2

on November 25, December 1, 8, 10, 22, and 29, and January 5.[1] On January 7, Plaintiff advised that, absent a concrete position, it would seek Court intervention to compel Defendant's participation in discovery. Defendant then agreed to confer on January 12, but at the conferral did not articulate a concrete position and instead disclosed for the first time that it intended to file its *forum non conveniens* motion.

On January 19, 2026, Defendant served its responses to Plaintiff's discovery requests, after Plaintiff agreed to a one-month extension. Those responses contained no mention of foreign law as an impediment to Defendant's compliance. *See* Exhibits A (Def.'s Resps. to Pl.'s First Set of Requests for Production) and B (Def.'s Resps. to Pl.'s First Set of Interrogatories). On January 21, 2026, Defendant filed its *forum non conveniens* motion. ECF No. 26. It also requested a discovery stay, ECF No. 28, which the Court granted on January 23, 2026, ECF No. 30.

After the Court denied Defendant's motion and lifted the discovery stay on May 27, Plaintiff promptly renewed her efforts. On May 28, Plaintiff sought conferral and re-sent the proposed ESI Protocol and Protective Order. Plaintiff followed up on June 2, and on June 3 defense counsel advised that they did not have positions to share but would provide an update the following week. On June 11, having received no update, Plaintiff followed up again. On June 15, at Defendant's request, Plaintiff circulated a draft Rule 26(f) report and asked Defendant to come prepared to discuss the schedule, ESI Protocol, and Protective Order at the next conferral. On June 17, defense counsel responded that they would "be prepared to discuss those issues." *See* Exhibit C (parties' email exchanges since May 28) at 10.

Defendant nevertheless appeared at the June 22 conferral with no concrete positions on the ESI Protocol, Protective Order, or Rule 26(f) Report. Defendant again stated generally that foreign laws could impede its compliance with the Federal Rules, but provided no specific provisions of the GDPR, BDSG, or any other foreign-law regime that would interfere with discovery, did not explain how any such provision would apply to the facts of this case, and did not propose specific revisions to any of the documents at issue. Instead, Defendant asked Plaintiff to advise how Defendant could comply with its allegedly conflicting obligations. Plaintiff responded that discovery should proceed in the ordinary course. After the conferral, Plaintiff further advised that, if Defendant could not provide concrete positions at the next conferral on June 29, Plaintiff would seek entry of the Protective Order and ESI Protocol without Defendant's agreement.

---

[1] On December 24, 2025, Defendant sent Plaintiff a draft Protective Order that did not incorporate any revisions predicated on the foreign law concerns Defendant had mentioned at the November 18, 2025 26(f) conference. On January 7, 2026, Plaintiff introduced a single revision to Defendant's proposal and asked Defendant to finalize the order for filing, assuming no objection. Defendant did not do so prior to filing its motion to dismiss and request for a stay of discovery. On June 22, 2026, following repeated requests from Plaintiff, Defendant circulated a revised draft confidentiality order that still did not address Defendant's foreign law concerns and stated that Defendant was "still waiting on comment from German counsel for any further changes on our end and will be back in touch in that regard." On June 26, Plaintiff responded with a proposal containing a single revision to the Order sent by Defendant. To date, Defendant has not advised Plaintiff of any proposed revisions grounded in foreign law.

3

However, on June 29, Defendant abruptly cancelled the conferral without explanation, stating only that it "anticipate[d]/hope[d] to know more by tomorrow" and would "be back in touch." *See* Ex. C at 6. In the same email, Defendant stated only that "we would not be able to finalize [the ESI Protocol and Protective Order] without addressing the implications of German and international laws that are at play here" and that it was "not Defendant's job to educate Plaintiff's counsel about the limitations on taking discovery in Germany." *Id.* On June 30, Plaintiff explained to Defendant via email that it is Defendant's burden, as the party resisting discovery on the basis of foreign law, to "identify[] the foreign-law conflict with particularity and explain[] how the law applies." *Id.* at 6. Attached to that June 30 email was a revised scheduling order containing, in draft form, a statement advising the Court of the history of Defendant's failure to engage collaboratively in discovery. In response, on July 2, Defendant proffered the statements of law referenced in its statement below, but still did not (and to date, has not) put forward a concrete position as to how any specific provision of foreign law applies to the ESI Protocol, Protective Order, or Plaintiff's discovery requests. Nor did Defendant make any changes to the proposed schedule based on those provisions, despite its repeated earlier statements that foreign law would require modification of the schedule.

Noting the representation in Defendant's statement that it "is in the process of finalizing its proposed edits to Plaintiff's proposed ESI Protocol and Confidentiality Order[,]" Plaintiff advised that she was considering revisions to her statement, with the substance of any revisions likely turning on when Defendant would provide its proposed edits to the ESI Protocol and Protective Order. *See* Ex. C at 5. On July 6, 2026, Defendant provided a date certain for the first time, representing that it would provide proposed revisions to the ESI Protocol and Protective Order within 14 days (i.e., by July 20, 2026, or approximately ten weeks of unstayed litigation time after receiving Plaintiff's proposals, and approximately four months of unstayed litigation time since Defendant first raised the issue of foreign law).

Defendant's undue delay has prejudiced Plaintiff and the Class. As noted, months of open discovery time have been wasted by Defendant's obstruction, and Plaintiff's counsel has expended significant resources in an unsuccessful attempt to secure a proposed ESI Protocol and Protective Order from Defendant. The entry of these orders is a prerequisite to discovery and Defendant has invoked their non-entry as a basis for objecting to Plaintiff's discovery requests. Specifically, Defendant objected to thirty-two (32) of Plaintiff's thirty-three (33) Requests for Production and six (6) of Plaintiff's eight (8) Interrogatories on the basis that the request seeks "confidential and/or proprietary information without the Court having entered a mutually agreeable confidentiality order and/or protective order." *See generally* Exs. A, B.

If Defendant fails to provide good-faith revisions to the ESI Protocol and Protective Order within the promised timeframe (i.e., by July 20, 2026), Plaintiff intends to move for entry of the ESI Protocol and Protective Order without Defendant's agreement.

4

*Initial Disclosures*

The parties' Initial Disclosures were due on December 2, 2025. Plaintiff served her initial disclosures on that date, but Defendant did not. After Plaintiff followed up on December 10 and 22, Defendant finally served Initial Disclosures on December 24. Those disclosures did not identify a single witness likely to have discoverable information.

Plaintiff notified Defendant of these deficiencies on December 29, 2025, and followed up on January 5 and January 7. Defendant has not, to date, updated its initial disclosures.

Plaintiff advised Defendant on January 7 that it would move to compel compliant initial disclosures if it did not provide potential custodians for discovery planning. Plaintiff refrained from filing that motion in light of Defendant's motion for *forum non conveniens* and the resulting discovery stay. On June 30, Plaintiff re-raised the issue and requested Defendant supplement its Initial Disclosures.

*Discovery Phasing*

In its statement, Defendant asserts that "[d]iscovery should be conducted, in phases, first focusing on the claims of the named Plaintiff." Defendant did not raise phasing in either of the parties' two Rule 26(f) conferences, and Plaintiff and Defendant have not conferred regarding this issue.

The specifics of Defendant's position are unclear, as it does not provide any details on the contours of its proposal let alone authority or even argument for its position. On this basis alone, Defendant's assertion that discovery should be limited to the claims of the named Plaintiff should be rejected. *See, e.g.*, *Bilek v. Federal Ins. Co.*, 344 F.R.D. 484, 488–89 (N.D. Ill. 2023) ("As the party seeking to limit discovery, the defendant has the burden of demonstrating that good cause exists for [the limitation]." (citation omitted)).

Moreover, bifurcation has "remained the exception and not the rule" in this and other districts because it "risks additional delay" in discovery. *Bilek v. Fed. Ins. Co.*, 344 F.R.D. 484, 488 (N.D. Ill. 2023) (evaluating defendant's bifurcation request under three-factor standard and rejecting request). Courts have long held that bifurcation burdens parties and courts with line-drawing disputes when the parties inevitably disagree about what discovery is permitted under the then-operative "phase."

Finally, to the extent Defendant proposes bifurcating discovery into the Plaintiff's claims and class discovery, such a proposal is nonsensical. As the Supreme Court succinctly put it, "the class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Indeed, Rule 23(c)(1)(A) requires that the Court address certification of the class "[a]t an early practicable time." Accordingly, courts hold that Rule 23(c)(1)(A) weighs against bifurcation when, as is the case here, the party requesting bifurcation fails to show it will expedite the case and the class certification decision. *See Beezley v. Fenix Parts, Inc*., 328 F.R.D. 198, 202–03 (N.D. Ill. 2018) (citing

1093428\330711337.v3

Rule 23(c)(1)(A) and holding the defendant failed to demonstrate bifurcated discovery will help the court make a timely class certification decision or otherwise expedite the case).

Plaintiff's position is that discovery should not be bifurcated, such that the parties may seek discovery on any topic permitted under Rule 26.

*Defendant's Statement*:

Discovery should be conducted, in phases, first focusing on the claims of the named Plaintiff. Defendant will seek discovery into the nature of the claims Plaintiff presents, the issue of Plaintiff's consent and/or contract formation with respect to Defendant's Terms of Use and forum selection clause, her and her counsel's adequacy as representatives, the individualized nature of the claims and other barriers to class certification, the existence or non-existence of both individual and class-wide concrete, particularized harm, and the applicable defenses.

Plaintiff supplemented her position herein regarding phasing discovery and shared it with Defendant at 5:21 PM on July 6, 2026, which included arguments and authority not previously asserted. Defendant requests that it be given leave to brief this issue, so that it may fully develop and present the applicable and appropriate facts, legal authorities and arguments that good cause exists in this case to warrant phasing discovery. In the alternative, and at a minimum, Defendant seeks leave to set forth its position in a Rule 16 conference. To briefly respond to Plaintiff's arguments, this Court has broad discretion to control discovery. Fed. R. Civ. P. 26; *James v. Hyatt Regency Chi.,* 707 F.3d 775, 785 (7th Cir. 2013). This includes the ability to stage or bifurcate discovery. *See, e.g., Lake v. Unilever U.S., Inc*., 964 F. Supp. 2d 893, 932 (N.D. Ill. 2013). Federal Rule of Civil Procedure 23 advisory committee notes provide: "It is appropriate to conduct controlled discovery into the 'merits,' limited to those aspects relevant to making the certification decision on an informed basis." *Id.,*(quoting Fed. R. Civ. P. 23 Advisory Committee Notes, 2003 amendments). There are several factors that the Court may consider when evaluating if good cause exists to stage or phase discovery in a putative class action. *See, e.g., Harris v. comScore, Inc*., No. 11 CV 5807, 2012 U.S. Dist. LEXIS 27665, at *8-9 (N.D. Ill. Mar. 2, 2012) (listing factors in deciding motions to stage discovery in class actions and granting motion to bifurcate discovery). Notably, as mentioned above, Defendant seeks to obtain discovery regarding Plaintiff's consent to the Terms of Use (e.g., forum selection clause), which may ultimately show that this case belongs (and Plaintiff agreed to litigate) in Germany. This is a threshold issue that could significantly impact Plaintiff's claims and by extension, discovery, and phasing discovery accordingly would promote the just, speedy, and inexpensive resolution of this matter. Fed. R. Civ. P. 1. Other circumstances support that good cause exists to phase discovery as well (*e.g.,* to protect privacy concerns when merits-based discovery seeks disclosure of private or sensitive information of Defendant's customers who are not and may never be members of the putative class Plaintiff seeks to represent; to expedite resolution of class certification issues like

6

adequacy, predominance, etc.; to prevent the parties from wasting time and resources before viability of the putative class is established, etc.).

In light of what Plaintiff sets forth in her position, Defendant offers additional context regarding the status of discovery, potential implications of EU/German law, and any perceived delays in the progress of this litigation. As noted in Plaintiff's position, Defendant began expressing to Plaintiff that EU/German law may present challenges in this matter at the earliest opportunity during the initial Rule 26(f) conference. Discovery was stayed for several months while the parties were litigating and this Court was evaluating a motion to dismiss based on *forum non conveniens*. A discovery schedule is not currently in place; this Court ordered that the parties submit this report by July 3, 2026 (ECF No. 55). After the discovery stay was lifted, Defendant expressed that it was willing to collaborate with Plaintiff to propose a schedule would make sense for this case, given that Defendant is a German entity. During the June 22, 2026, conference, Defendant noted certain EU/German laws may be implicated, including the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention"), the European Union's General Data Protection Regulation (GDPR), and the German Federal Data Protection Act (BDSG)). Defendant also noted that there may potentially be a need for additional time to accommodate requirements to obtain evidence from Germany or a German resident, and asked if Plaintiff had considered the EU/German law implications when preparing the proposed schedule. Defendant expressed that it would consider any prior approach(es) where Plaintiff had success in handling discovery from Germany (or even a different foreign country). Plaintiff did not share whether she had considered any potential delays or impact on discovery in this regard and did not demonstrate familiarity with the interplay of German/EU laws in U.S. discovery, such as Germany's specific requirements for taking depositions of German residents. Plaintiff indicated that she believed that U.S. laws supersede EU/German law concerning discovery. Plaintiff did not provide any support concerning that position. Defendant also suggested that the parties could consider engaging a liaison to assist in facilitating any issues that may arise during discovery concerning EU/German laws, somewhat akin to an ESI liaison as utilized in the Seventh Circuit's former ESI pilot program. Plaintiff did not express an interest in pursuing a liaison for this purpose. In sum, the parties appear to have different understandings of the challenges presented. While Plaintiff may elect to not engage with Defendant in collaborative efforts to address the potential challenges of German/EU law, that approach will not advance the progress of this case any more quickly, and will likely require greater involvement from the Court.

As explained further below, Defendant is not excused from abiding by or immune from the consequences of EU/German laws simply by being a party to this case. The determination for what law(s) this Court may deem are applicable discovery will depend on a variety of factors and may or may not apply to different types of discovery. The specific application and implication of German/EU laws will

1093428\330711337.v3

depend on how the case and discovery develop and what specific information or documents Plaintiff seeks. Relatedly, Defendant is in the process of finalizing its proposed edits to Plaintiff's proposed ESI Protocol and Confidentiality Order to address and acknowledge the potential impact and protections of EU/German law, and ensure that any such joint submissions will appropriately reflect its compliance with the same. Defendant anticipates providing those edits to Plaintiff within the next 14 days. No motion practice is warranted.

As discovery is a collaborative process typically involving ongoing discussions among counsel, some potential limitations posed by EU/German law may or may not come to pass based on those discussions. While questions regarding what international law(s) this Court may apply (or that the Parties may agree to follow) to discovery here is still undetermined (and as it is unclear to what extent Plaintiff is willing to take any steps to address German/EU law regarding discovery), Defendant offers the following to demonstrate how EU/German laws may be implicated in this case and/or impact the timing or substance of discovery:

- Hague Convention considerations:
  - o The United States and Germany are signatories to the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matter. *See Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern Dist. of Iowa,* 482 U.S. 522, 524 n.1 (1987). The Hague Convention allows certain methods for obtaining evidence in civil litigation, including letters of request. *See, e.g., Behrens v. Arconic, Inc*., No. 19-2664, 2020 U.S. Dist. LEXIS 44581, at *8-9 (E.D. Pa. Mar. 13, 2020) (describing Hague Convention's methods for production of evidence). In Germany, a letter of request must be sent to a designated recipient for such letters, among other requirements.[2] To the extent that evidence is sought from Germany from a non-party, the Hague Convention must be adhered to. When the discovery is sought from a party to U.S. litigation, if the parties do not agree, the Court applies a balancing test to determine whether to apply the international law or U.S. law. *See, e.g., Behrens*, 2020 U.S. Dist. LEXIS 44581, at *30-31 (applying balancing test of the five *Aerospatiale* factors and determining that application of the Hague Convention was favored, ordering plaintiffs to utilize Hague Convention processes to obtain discovery from the France-based defendant). Indeed, "the Hague Convention coexists with the

---

[2] *See,* Judicial Assistance Destination Information, Germany; Obtaining Evidence in Civil and Commercial Matters, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Germany.html (last accessed July 1, 2026); *see also* Germany – Central Authority (Art. 2, 24) and practical information, available at https://www.hcch.net/index.cfm?oldlang=en&act=authorities.details&aid=501 (last accessed July 1, 2026) (describing requirements for letters of requests to Germany).

1093428\330711337.v3

discovery rules in the Federal Rules of Civil Procedure—it is not inferior nor is it superior." *Id.*

- Depositions of German residents:
  - o There are necessary procedures for a deposition of a German resident, including but not limited to that the deposition must take place at the U.S. Consulate in Frankfurt, Germany, require advance notice and scheduling, and require approval by the German Ministry of Justice. Failure to comply with the requirements can result to criminal penalties against the participants.[3]

- Discovery Involving "personal data" under the GDPR:
  - o The EU General Data Protection Regulation (GDPR) sets limitations on the "processing" or transfer of "personal data" on Germany-based entities like Defendant. *See* GDPR, art. 3(1). Failure to comply with the GDPR can result in significant consequences— *e.g.,* up to 4% of a company's annual worldwide revenue (GDPR, art. 83(5)), private damages from individuals whose personal data was transferred unlawfully (GDPR, art. 82(1)).
    - "Personal data" is "any information relating to an identified or identifiable natural person ('data subject'); an identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person." GDPR, art 4(1).
    - The GDPR also recognizes "special categories" of personal data, which include but are not limited to "data concerning health" and "data revealing racial or ethnic origin, political opinions, religious or philosophical beliefs, or trade union membership." GDPR, art. 9(1).
    - "Processing" means "any operation or set of operations which is performed on personal data or on sets of personal data, whether or not by automated means, such as collection, recording, organization, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction.") (emphasis added). GDPR, art. 4(2).

---

[3] *See,* Judicial Assistance Destination Information, Germany; Taking Voluntary Depositions of Willing Witnesses, available at https://travel.state.gov/content/travel/en/legal/Judicial-Assistance-Country-Information/Germany.html (last accessed July 1, 2026); *see also* extension://efaidnbmnnnibpcajpcglclefindmkaj/https://de.usembassy.gov/wp-content/uploads/sites/19/2024/03/Deposition-Instructions-2024.pdf (U.S. Consulate General in Frankfurt Germany's deposition instructions).

- An order by a court outside of the EU does not, on its own, establish a legal basis for transfer of personal data internationally. GDPR, art. 48. Transfer to the U.S. can be permitted if (i) the data transfer is "necessary for the purposes of the legitimate interests pursued by the controller or by a third party, except where such interests are overridden by the interests or fundamental rights and freedoms of the data subject which require protection of personal data" (GDPR, art. 6(1)(f)); (ii) "the transfer is necessary for the establishment, exercise, or defense of legal claims" (GDPR, art. 49(1)(e)); and (iii) it is "limited to what is necessary" (GDPR, art. 5(1)(c)). Recital 39 of the GDPR indicates that data transfers are necessary "only if the purposes of the processing could not reasonably be fulfilled by other means." GDPR, Recital 39. Necessity requires "a close and substantial connection between the data in question and the specific establishment, exercise, or defense of the legal position."[4] Thus, "necessity" is not equivalent to "relevance," and necessity determinations will be fact- and claim-dependent.

- Discovery involving "personal data" and special categories of personal data under the BDSG:
  - The German Federal Data Protection Act (BDSG)[5] implements the GDPR and sets forth additional limitations and protections to the transfer of personal data and "special categories" of personal data, GDPR, art. 9(1); BDSG, pt. 3, Ch. 1, § 46. The BDSG also limits the processing of personal data with an exception that allows for processing when it is "necessary for the establishment, exercise, or defense of legal claims." *Id*. § 24(1). Processing special categories of personal data is allowed only if certain additional conditions are met. BDSG, pt. 2, Ch. 1, § 24; *see also* § 22(1). Failure to comply with the BDSG may result in substantial fines and even criminal penalties. BDSG, pt. 2, Ch. 5 §§ 42-43.

Should a dispute arise where the production/discovery at issue requires modification of the parties' discovery approach (*e.g.,* if EU/German law would block the discovery), court intervention may be necessary. *See, e.g., Aerospatiale*,

---

[4] *See* European Data Protection Board, *Guidelines 2/2018 on derogations of Article 49 under Regulation 2016/679,* at 12, located at https://www.edpb.europa.eu/documents/guideline/guidelines-22018-on-derogations-of-article-49-under-regulation-2016679_en?g=86359a69-1b47-47c5-8ee4-02dd4372d744 (last accessed July 1, 2026) ("Whilst there may be a temptation for a data exporter to transfer all possibly relevant personal data in response to a request or for instituting legal procedures, this would not be in line with this derogation or with the GDPR more generally as this (in the principle of data minimization) emphasizes the need for personal data to be adequate, relevant and limited to what is necessary in relation to the purposes for which they are processed.").

[5] BDSG English translation available at https://www.gesetze-im-internet.de/englisch_bdsg/englisch_bdsg.html (last accessed July 1, 2026).

10

482 U.S. at 541 (describing multi-factor test for court to analyze whether the application of the international law applies in a particular case); *Behrens*, 2020 U.S. Dist. LEXIS 44581, at *30-31 (ordering discovery of France-based defendant to comply with Hague Convention after engaging in the balancing test set forth in *Aerospatiale*).

Accordingly, to the extent that any documents, information, data, or metadata is sought from Defendant in discovery, Defendant must comply with the GDPR, BDSG, and/or any other applicable EU or German discovery, data-sharing, or data-privacy law in effect, and Defendant reserves the right to assert objections, seek protective orders, or take other action to limit discovery requests and/or any responses to discovery requests that would require it to violate any such law. Defendant reserves the right to require that depositions of any employee, manager, or other witness in its control, to be conducted in compliance with the Hague Convention and the German Ministry of Justice, as failure to do so may lead to fines and/or criminal penalties to any participants.

Plaintiff incorrectly suggests/conflates the burden in a discovery motion seeking to apply a foreign law that "blocks" requested discovery is the burden that Defendant must preemptively meet now, in the context of Rule 26(f) discussions where it simply flagged that EU/German laws may complicate discovery. This joint planning report is the parties' opportunity to propose a discovery schedule to the Court. ECF No. 55. In the context of preparing a proposed schedule, Defendant alerted Plaintiff that there was potential for issues in taking discovery of Defendant due to EU/German law. Defendant did not take the position that all EU/German laws are "blocking" statutes (*e.g.,* as discussed above, some may result in a longer period of time for a response). Any blocking-statute issue will be a fact-specific and request-specific inquiry. Defendant remains optimistic that throughout the discovery process, there are steps that can be taken and/or compromises that can be made through collaboration of the parties (*e.g.,* tailoring requests, redacting certain information, etc.) before the parties have to resort to involving the Court. If a discovery dispute arises that, after attempts to compromise and confer, Defendant believes that the requested discovery is "blocked" by a foreign law, then there may be a need for Court intervention, and at that time Defendant may be faced with the burden Plaintiff raises.

Defendant disagrees with Plaintiff's characterization that she has been "prejudiced" or that it has contributed to "undue delay" in discovery. Defendant flagged the potential application of EU/German law before discovery was issued. As stated above, Defendant disagrees that the burden necessary to establish application of a foreign blocking statute is a burden that it must meet in raising potential discovery issues at this stage. Discovery was stayed for a significant period of time due to its motion to dismiss for *forum non conveniens,* which sought dismissal based on a threshold issue—that this case belongs in Germany. Specifically, Defendant argued that Plaintiff's subscription was governed by a contract which included a forum selection clause mandating that her claims be litigated in Germany and German law would govern. At the time that Defendant responded to Plaintiff's discovery

11

1093428\330711337.v3

requests (January 19, 2026, two days before its motion to dismiss was filed), that threshold issue about where this case should be litigated (and what law was going to apply) was not determined. Defendant's responses expressly asserted objections in that regard, citing the motion to dismiss for *forum non conveniens* and motion to stay discovery. Defendant also expressly reserved the right to provide updated responses and objections if the discovery stay was lifted—i.e., if this case and discovery proceeded in this forum. After ruling on the motion to dismiss, this Court lifted the discovery stay and asked for an updated 26(f) report by July 3, 2026. ECF No. 55.

*Plaintiff's Proposed Schedule:*

Plaintiff's proposed schedule reflects the same periods as the parties agreed to before Defendant filed its motion to dismiss.

(a) Initial disclosures will be made by **December 2, 2025.** Fact discovery will be commenced in time to be completed by **December 18, 2026.**

(b) Plaintiff expects to need **10** fact depositions, a Fed. R. Civ. P. 30(b)(6) deposition, and deposition(s) of Defendant's expert(s). Defendant expects to need 5 depositions.

(c) Reports from retained experts under Rule 26(a)(2) due:

Date for Plaintiff to comply with Fed. R. Civ. P. 26(a)(2): **March 19, 2027**
Date for Defendant to comply with Fed. R. Civ. P. 26(a)(2): **March 19, 2027**
All expert discovery shall be completed by **June 11, 2027.**

(d) All potentially dispositive motions, and Plaintiff's motion for class certification, shall be filed by **July 16, 2027**.

(e) Plaintiff shall prepare a proposed draft of the final pretrial order no more than **60 days** following the Court's ruling on class certification and on any dispositive motions. The parties shall file a joint final pretrial order no more than **60 days** after Plaintiff provides her proposed draft.

(f) Trial of this case is expected to take **seven (7) court days.**

*Defendant's Proposed Schedule:*

Defendant does not object to the Plaintiff's proposed schedule, with the caveat that any discovery Plaintiff intends to take of Defendant will potentially or likely entail obligations and/or limitations under international laws including but not limited to the Hague Convention, the GDPR, and BDSG, as set forth in Defendant's position above, which may necessitate schedule modifications not typically present in litigation involving exclusively domestic parties. Additionally, Defendant's

1093428\330711337.v3

agreement to the proposed schedule shall not be deemed an agreement to forego compliance with, or waiver of any of its rights under the foregoing.

4. **Settlement.** The parties discussed certain settlement logistics at their initial discovery planning meeting, including Plaintiff's request that Defendant disclose preliminary estimates of the size of the proposed class, the amount of charges relating to the conduct challenged in this litigation, and other threshold information needed for the parties to determine whether settlement discussions could bear fruit at this stage of the case. The parties will continue to discuss and update the Court accordingly.

5. **Consent.** The parties **do not** consent unanimously to jurisdiction by the assigned magistrate judge.

Dated: July 6, 2026

/s/ Daniel Kieselstein_____
Daniel Kieselstein
WITTELS MCINTURFF PALIKOVIC
305 Broadway, 7th Floor
New York, New York 10007
Tel: (914) 775-8862
djk@wittelslaw.com

*Attorneys for Plaintiff and Proposed Class*

/s/ Justin M. Penn_____
One of Defendant's Attorneys
Justin M. Penn
HINSHAW & CULBERTSON
151 N. Franklin, Ste. 2500
Chicago, IL 60606
(312) 704-3000
jpenn@hinshawlaw.com

*Attorneys for Defendant*

13

1093428\330711337.v3

14

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2026, a true and correct copy of the foregoing document was served via ECF upon all counsel of record.

/s/ Daniel Kieselstein
Daniel Kieselstein

1093428\330711337.v3